UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Sheri Kleeger | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Ali Salamirad | Hannah Schartiger<br>Thomas Coker, AUSA |

**Proceedings:**     COUNTER-CLAIM DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (Docket #25, filed August 9, 2012)

## I.     INTRODUCTION

Plaintiff Hartford Fire Insurance Company ("Hartford") commenced this action on February 8, 2012.  Plaintiff's complaint alleges three claims for relief: (1) breach of contract, (2) breach of warranty, and (3) violation of California's prompt payment statutes.  On March 2, 2012, defendant Elsinore Valley Municipal Water District ("the District") filed an interpleader counterclaim against plaintiff and the United States Department of Treasury ("United States").

Counterclaim defendant United States filed a motion for summary judgment on August 9, 2012.  Hartford filed an opposition on August 20, 2012, and the United States replied on August 27, 2012.  Hartford also moved for leave to file a surreply on September 5, 2012, which the United States opposed on September 6, 2012.[1]  The Court held a hearing on September 10, and on September 13 requested additional briefing on the motion.  Dkt. No. 34.  After considering the parties' supplemental briefing, on October 11, 2012, the Court issued a tentative order in this case, which requested additional briefing again from the parties.  On October 22, 2012, Hartford filed supplemental briefing in response to the Court's October 11, 2012 tentative, and the

---

[1]Although this surreply was filed without the Court's permission, the Court will nonetheless consider the arguments raised therein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

United States filed supplemental briefing in on October 29, 2012.  The United States' motion is presently before the Court.

## II.     BACKGROUND

### A.     Undisputed Facts

Remedial Civil Constructors ("RCC") is a general engineering contractor licensed to do business in California.  United States' Uncontroverted Statement of Fact and Conclusion of Law ("Govt. USF") 5; Hartford's Statement of Genuine Issues ("Hartford SDF") at 9.  In August 2009, the District entered into a contract with RCC to perform a public work of improvement known as the Wildomar Recycled Water System-Phase 1 Off-Site Facilities Project (the "Project").  Govt. USF 6; Hartford SDF at 9.  After commencing the Project, a dispute arose between the District and RCC concerning the nature and scope of the work to be performed.  Govt. USF 7; Hartford SDF at 9.  However, RCC proceeded with and completed the Project.  Govt. USF 8; Hartford SDF at 9.

Under RCC's public work contract with the District, the District required RCC to furnish surety bonds.[2]  Levesque Decl. ¶ 5.  These surety bonds ensure that subcontractors, suppliers, and others who contribute to a public construction project are paid even if the contractor defaults.  RCC requested that Hartford issue the bonds for the project, and Hartford issued the bonds.  Levesque Decl. ¶ ¶ 6 – 7.

During construction, RCC became financially incapable of paying its subcontractors and suppliers, and requested that Hartford assist with paying them.  Id. ¶ 9.  Hartford received 28 claims from subcontractors and suppliers, and paid $1,115,163.09 to resolve the claims.  Id. ¶ 11.   Additionally, the District received stop payment notices from subcontractors, including a $161,944.66 stop payment notice from All American Asphalt dated January 25, 2011.[3]  Because the stop payment notices exceeded the balance owed to RCC for work on the project, the District was not able to

---

[2]The facts underlying the history of Hartford's surety bond and payment of RCC's creditors are not in dispute for purposes of this motion.  See Def.'s Opp. at 10 – 11; Govt.'s Reply at 12 – 13.

[3] California's stop payment statutes are explained in section IV.B.1 below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

pay either the stop payment notice claimants or RCC.  Id. ¶¶ 14 – 15.  Consequently, the District withheld $202,493.36 due to RCC.  Govt. USF 9; Hartford SDF at 10.  The District agreed to release all contract funds owed to RCC to Hartford once Hartford resolved the stop payment notice claims.  Levesque Decl. ¶ 17.

In addition to failing to make payments to subcontractors on the Project, RCC owes unpaid federal taxes.  The IRS made tax assessments against RCC and filed Notices of Federal Tax Liens with the California Secretary of State.  Govt. USF 14; Hartford SDF at 11.  These liens were filed on May 29, 2009; September 30, 2009; November 30, 2009; March 12, 2010; April 27, 2010; and July 27, 2010.  Govt. USF 14; Hartford SDF at 11.  The IRS also made assessments against RCC for unpaid FUTA taxes for the years 2008 and 2010 on June 29, 2009, and April 11, 2011, respectively.  Govt. USF 15; Hartford SDF at 12.  RCC owed the United States unpaid employment taxes as of June 30, 2012, and the United States attempted to collect unpaid taxes by serving a notice of levy on the District with respect to amounts owed to RCC.  Govt. USF 16; Hartford SDF at 12; Govt. USF 11; Hartford's Opp. at 11.

Facing competing claims from Hartford and the United States to the contract funds withheld from RCC (the "Interpleader Fund"), the District filed a counterclaim interpleading the funds and naming the United States and Hartford as defendants.  According to its interpleader counterclaim, the District is holding $383,858.78 due to RCC.  District Counterclaim, Dkt. #7, ¶ 56.

**B.      Disputes about Amounts Owed**

Hartford disputes the balance of RCC's unpaid taxes.  Hartford's Reply at 11 – 12.  The United States claims that it is owed $361,921.53 for unpaid employment taxes, and filed Notices of Federal Tax Liens against RCC for outstanding taxes it has assessed at $583,232.34.  Govt.'s Mot. Exs. 102 – 108.

Hartford puts forward no facts that call into question the government's figures.  However, Hartford has served interrogatories on the United States asking it to explain how it calculated the $361,921.53 figure, and why it is only making a claim of $361,921.53 against the Interpleader Fund given that it served the District with a levy claiming that RCC owed $583,232.34 in unpaid taxes.  Salamirad Decl. ¶ 5, Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

Additionally, the parties dispute how much money was due to RCC from the District. According to the government, the balance owed to RCC on the District's contract was $383,858.78. Govt. Fact 11; see also defendant's First Amended Answer to the Complaint ¶ 56. Hartford disputes this amount, and although it agrees that RCC was owed at least $202,493.36, it does not state the exact figures it believes the District owed to RCC. Hartford's Reply at 10.

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | "O" |
|---|---|---|---|
| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.    ANALYSIS

### A.    Plaintiff's Request to Defer Ruling on the Motion

Before addressing the merits of the United States' motion for summary judgment, the Court considers plaintiff's argument that the Court should defer ruling on the motion because it has yet to complete discovery.

Federal Rule of Civil Procedure 56(d) provides that a court may defer considering a motion for summary judgement if the non-moving party shows "it cannot present facts essential to justify its opposition."  A claim that discovery is incomplete does not necessarily satisfy Rule 56(d).  A party asking a Court to defer ruling on a motion for summary judgment must set forth with particularity why it cannot respond to the summary judgment motion, what facts the party expects to obtain from further discovery, and how the information could create a genuine issue of material fact that would defeat summary judgment.  Adams v. Allstate Insurance Co., 187 F.Supp.2d 1207, 1213 (C.D. Cal 2002) (Feess, J.).

Plaintiff explains that it has yet to receive responses to interrogatories and requests for production of documents.  Plaintiff's interrogatories ask the United States to explain how it calculated its claim for $361,921.53 in the interpleader action, and why it is not claiming $583,232.34, which is the amount of taxes it claimed to be owed by RCC in a levy it served on the District.  Plaintiff's requests for production of documents seek some of the United States' internal policy documents and RCC's entire tax file.  The government's responses to these discovery requests are currently the subject of meet and confer efforts.

Since plaintiff's outstanding interrogatories seek information about the basis on which the United States calculated the balance of its claim, the Court finds reason to defer ruling on the amount of any federal tax lien.  Hartford seeks information regarding the balance of taxes owed to the United States, so ruling on this issue should be deferred until Hartford receives the information requested in its interrogatories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL            "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

However, plaintiff has failed to explain why the Court should defer ruling on the existence of federal liens or the priority of the federal liens. Plaintiff does not set out what additional facts it reasonably expects to discover that would create a genuine issue of material fact that would defeat summary judgment on either of these issues.

### B.     The Federal Tax Liens

To resolve Hartford and the United States' competing claims to the Interpleader Fund, the Court must determine whether the United States' tax liens have attached to the Interpleader Fund and, if so, whether the liens have priority over Hartford's claims. To determine the existence and priority of the federal tax liens, the Court's inquiry proceeds in three steps. First, the Court looks to state law to determine to what extent RCC has rights or a property interest in the Interpleader Fund to which a tax lien could attach. Aquilino v. United States, 363 U.S. 509, 512 – 513 (1960). The Court then considers whether, under federal law, the tax liens attached to RCC's rights in the Interpleader Fund. Drye v. United States, 528 U.S. 49, 52 (1999). Finally, the Court again looks to federal law to resolve the priority of competing liens asserted against any interest by RCC in or to the Interpleader Fund. Aquilino, 363 U.S. at 513 – 514.

### 1.     RCC Had a State Law Right or Interest in the Interpleader Fund to Which the Federal Tax Liens could Attach

The parties agree that the government can prevail only if it proves that, under California law, RCC has rights or a property interest in or to the Interpleader Fund. Aquilino v. United States, 363 U.S. 509, 512 – 513 (1960). The main dispute between the parties is whether the stop payment notices and the subsequent payments by Hartford acted to deprive RCC of a property interest in its right to payment under the public works contract.

According to the United States, RCC has a property interest in the Interpleader Fund. The United States recognizes that the stop payment notices filed by subcontractors required the District to withhold the funds due to RCC, but takes the position that the District was merely the custodian of the funds and legal title still rested with RCC. A.J. Setting Co. v. Trustees of Cal. State University & Colleges, 119 Cal.App.3d 374, 382 (Cal. App. 2d 1981) ("While recognizing a claimant's right to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

payment, the stop notice code sections do not thereby ignore the prime contractor's legal right to those funds . . . . only when served with a stop notice does the public entity mandatorily become a custodian of funds whose legal title rests in the prime contractor.").

According to Hartford, RCC has no legal right or interest in the Interpleader fund. Hartford makes two arguments in support of this conclusion. First, Hartford argues that under an indemnity agreement between RCC and Hartford, RCC assigned its rights to receive payment on the project in the event that it failed to pay the debts guaranteed by the bond. Levesque Decl. Ex. B. Hartford concludes that when RCC became incapable of paying its bills on the projects, this assignment provision was activated and Hartford acquired RCC's right to receive payment for work performed on the contract. Second, Hartford argues that RCC has no right to the Interpleader Fund because the funds due to RCC were the subject of stop payment notices.

The Court finds that RCC had a property interest in the Interpleader Fund. The Court first considers Hartford's argument that the assignment provision in its contract deprived RCC of any property interest in the Interpleader Fund. While Hartford's argument may have had some merit if the assignment of the contract proceeds occurred prior to the filing of the federal tax liens, in this case the federal tax liens were filed long before RCC's defaults activated the assignment provision in Hartford's contract. Consequently, the assignment provision did not deprive RCC of a property interest in the proceeds of its contract with the district. See Capitol Indemnity Corp. v. United States, 41 F.3d 320, 325 – 326 (7th Cir. 1994); Atlantic National Bank v. United States, 536 F.2d 1354, 1356 (U.S. Ct. Clms. 1976).

The Court next considers Hartford's argument that the stop payment notices deprived RCC of any interest in the Interpleader Fund. The parties agree that some portion of the Interpleader Fund was withheld from RCC pursuant to California's stop notice statutes, Cal. Civ. Code § 9350 et. seq.[4] Under California law, subcontractors on a

---

[4] On July 1, 2012, California's laws governing stop notice claims were renumbered and revised. In passing this new law, the California legislature stated that "[a] provision of this part, insofar as it is substantially the same as a previously existing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

public works project may submit a stop payment notice to the public agency who commissioned the project to ensure that they are paid for the labor or materials they have contributed to the public work.  A stop notice informs a public entity that a subcontractor has not been paid for services it performed, and directs the public entity to withhold an amount of funds due to the public contractor sufficient to pay the subcontractor for its services.  Cal. Civ. Code §§ 9352, 9358.  A stop payment notice takes priority over any assignment of funds due on a public contract, and any statutory lien on funds due on a contract is subordinate to the rights of a stop notice claimant.  Id. § 9456.

After the funds have been withheld, the contractor has access to summary proceedings to challenge the withholding on the grounds that the amount claimed in the stop payment notice is excessive or baseless.  Id. § 9400.  These summary proceedings are dispositive of the stop notice claimant's right to have further funds withheld from the contractor, but are not otherwise a final determination of the claimant's rights.  Id. §§ 9412, 9414.  Additionally, a stop notice claimant can commence an action against the public entity and the contractor to enforce the rights claimed in the stop payment notice.  Id. §§ 9500 – 9504.[5]

---

provision relating to the same subject matter, shall be construed as a restatement and continuation thereof and not as a new enactment."  Cal. Civ. Code § 8052.  In this case, although the relevant stop notice statutes were filed prior to July 1, 2012, and are therefore governed by the law as it existed prior to July 1, 2012, the statutes and principles that apply to this case remained "substantially the same" after the revisions.  In fact, commentators have noted the revision has not substantially changed the law at all.  See, e.g., Everything Old is New Again: Impact of SB 189 on Mechanics' Lien Law, Miller & Starr Real Estate Newsalert ("For the most part, the changes to the Mechanics Lien Law simply relocate the statutes from their most recent home in Civil Code sections 3082 to 3267, and place them in newly-created Civil Code sections 8000 to 8840 and 9000 to 9566.3. . . . None of [the changes] alter existing well known legal principles.").  Consequently, the Court's citations to the applicable California law utilize the new numbering system, not the numbering that existed prior to July 1, 2012.

[5] The stop payment notice procedure is not, however, the only method through which subcontractors can enforce their rights to payment.  A subcontractor may also recover against the contractor's surety in an action against the surety's payment bond,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|----------|------------------------|------|-------------------|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

In essence, the stop notice statutes provide a way of resolving multiple claims to construction funds by subcontractors and the contractor without disbursing those funds to any claimant.  These statutes do not deprive a contractor of its property interest in funds due on a contract until the claims are resolved, but instead deprive the contractor of control over the funds while multiple claims to funds due on the contract are resolved. As explained by the California court of appeals, the stop notice statutes do not deprive a contractor of its right to funds due on a contract, but temporarily makes the public entity "a custodian of funds whose legal title rests in the prime contractor." A.J. Setting Co. v. Trustees of Cal. State University & Colleges, 119 Cal.App.3d 374, 382 (Cal. App. 2d 1981).[6]

Where, as here, a taxpayer is one among many claimants to property, the taxpayer has an interest in property to which a federal tax lien can attach. United States v. Safeco Ins. Co. of America, Inc., 870 F.2d 338, 341 (6th Cir. 1989) ("A federal tax lien attaches to a taxpayer's interest in property regardless of whether that interest is less than full ownership or is only one among several claims of ownership.") (citing United States v. National Bank of Commerce, 472 U.S. 713, 725, 730 (1985)).  In National Bank of Commerce, the Supreme Court considered whether a federal tax lien could attach to taxpayer's right to withdraw funds from a bank account even though it was unclear whether the taxpayer or another individual named on the account had a right to the funds. National Bank of Commerce, 472 U.S. at 716. The Court reasoned that the taxpayer had a right to the funds in the account "regardless of the facts that other claims to the funds may exist" and "the question of ultimate ownership may be unresolved." Id. at 725 – 726. Here, similarly, because RCC completed the contract in this case, it had a right to funds due on the contract even though other claims existed when the stop notice was filed and the question of ownership was unresolved.

---

even if the subcontractor has not served a stop payment notice on the public agency.  Id. §§ 9452, 9564.

[6] See also American Fidelity Fire Ins. Co. v. United States, 385 F. Supp. 1075, 1079 (N.D. Cal. 1974) (rejecting the argument that under the stop payment statutes, funds due on a contract become "a trust fund for payment of laborers and materialmen.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

It could be argued that National Bank of Commerce is distinguishable because in that case the taxpayer had an "absolute right under state law . . . to compel the payment of the outstanding balance in the two accounts," National Bank of Commerce, 472 U.S. at 724, whereas here the stop payment notice statutes deprive a contractor of control over funds due on the contract while multiple claims are pending. Courts have held, however, that a federal tax lien can attach to funds due to a taxpayer even when that taxpayer has no right to demand immediate payment of the funds. Safeco Ins. Co. of America, Inc., 870 F.2d at 341 (taxpayer had interest in funds even though he had no right to receive them without an order from bankruptcy court).

Moreover, a determination that California's stop notice statutes deprived RCC of any inchoate interest in funds due on the contract to defeat the government's claims would contravene the established policy that federal law – not state law – controls the priority of competing claims on a taxpayers property. See, e.g., Aquilino, 363 U.S. 509, 513 (1960); Drye v. United States, 528 U.S. 49, 57 ("the Code and interpretive case law place under federal, not state, control the ultimate issue whether a taxpayer has a beneficial interest in any property subject to levy for unpaid federal taxes."). When the funds came due to RCC, there were several claims against RCC, including liens filed by the IRS and potential stop notice claims by subcontractors on the Project. While California's stop notice statutes provide a detailed statutory scheme for resolving claims against funds due to a contractor on a public work, federal law, not state law, controls the relative priority of tax liens and other claims. If state law could operate to subordinate RCC's interest in the funds due on the contract and thereby eliminate the government's ability to attach that interest, it would effectively dictate the priority of these competing claims, which contradicts fundamental principles of federal tax law.[7]

---

[7]Of course, state law can operate to deprive a contractor of its interest in funds due on a contract when the contractor actually fails to complete performance. See, e.g., Colusa-Glenn Production Credit Asso. v. Phoenix Ins. Co. 145 F. Supp. 844 (N.D. Cal. 1956); Fidelity & Deposit Co. Of Md. v. New York City Housing Authority, 241 F.2d 142 (2d. Cir. 1957). Here, however, the parties agree that RCC completed performance, so these cases are inapposite.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|----------|------------------------|------|-------------------|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

Resisting this conclusion, Hartford contends that California's stop payment notice statutes are materially identical to North Carolina statutes that were held to deprive a taxpayer of any property interest in funds due on a construction contract in <u>United States v. Durham Lumber Co.</u>, 363 U.S. 522 (1960). In <u>Durham Lumber Co.</u>, the Court considered competing claims by the IRS and two subcontractors to funds due on a contract. <u>Id</u>. at 523. The subcontractors argued that a set of North Carolina statutes deprived the contractor of any interest in the contract proceeds. As described by the Court, these statutes provided:

> Subcontractors who have not been paid by the general contractor have a direct, independent cause of action against the owner to the extent of any amount due under the general construction contract, and any money owed by the owner under the construction contract must first be used to satisfy subcontractors' claims of which the owner has notice. Moreover, to insure that the owner will receive notice of outstanding subcontractors' claims, the North Carolina statute, N.C.Gen.Stat.1950, s 44-8, requires the general contractor, before receiving any payment, to furnish the owner with a statement of all sums due subcontractors, and if the general contractor fails to supply the required statement, he is guilty of a misdemeanor. N.C.Gen.Stat.1950, s 44-12. Finally, the court found further evidence of the direct and independent nature of the subcontractors' claims against the owner in N.C.Gen.Stat.1950, s 44-9, which provides that should the owner pay the general contractor after receiving notice of a subcontractor's claim, he will nevertheless be liable to the subcontractor to the extent of the amount which was due under the construction contract at the time notice was received.

<u>Id</u>. at 524 – 525. According to the lower court, these statutes operated to deprive the contractor of its interest in the contract proceeds, and the Supreme Court affirmed.

The state statutes in <u>Durham Lumber</u> have some resemblance to California's stop notice scheme. The Supreme Court summarily affirmed the court of appeals due to its unwillingness to question its interpretations of state law. <u>Id</u>. at 527 ("Since the Court of Appeals is much closer to North Carolina law than we are, and since we cannot say that the court's characterization of the taxpayers' property interests under that law is clearly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

erroneous or unreasonable, the judgment is affirmed."). Therefore, because <u>Durham Lumber</u> did not consider the precise statutory scheme at issue in this case, nor did it provide a careful analysis of the state statutes that were at issue, nothing in <u>Durham Lumber</u> provides a basis for the Court to abandon the above analysis leading to the conclusion that RCC retained an interest in the Interpleader Fund.

Accordingly, RCC retained a property interest in the Interpleader Fund, including the portion of the fund withheld pursuant to the stop payment notice.[8]

## 2.    The Federal Tax Lien Attached to the Interpleader Fund

The Court next considers whether the federal tax lien attached to RCC's interest in the Interpleader Fund. Under 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The Supreme Court has observed that this statutory language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." <u>United States v. National Bank of Commerce</u>, 472 U.S. 713, 719 – 720 (1985). Accordingly, the federal tax liens attached to RCC's interest in the Interpleader Fund under 26 U.S.C. § 6321.

---

[8] Hartford, for the first time in its surreply brief, cursorily raises the issue that RCC should be joined as a necessary party under Federal Rule of Civil Procedure 19(a) if it has any legal interest in the Interpleader Fund, and that the interpleader action should be abated and government's motion should be denied until RCC has been joined. This argument fails because there is no evidence that RCC has claimed an interest in the Interpleader Fund, and according to Hartford itself and the United States, RCC has no practical interest in the Interpleader Fund for the reasons enumerated in their briefs. Additionally, to the extent that RCC has an interest in opposing the government's motion for summary judgment by showing that no federal tax lien has attached to the Interpleader Fund, that interest is adequately represented by Hartford. <u>See, e.g.</u>, <u>F.D.I.C. v. Bank of New York</u>, 479 F.Supp.2d 1, 10 (D.D.C. 2007) ("It is well settled that adjudicating an absent person's claim cannot impair or impede the person's ability to protect his interest if he is adequately represented by one of the existing parties.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|----------|------------------------|------|-------------------|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

Hartford contests this conclusion.  According to Hartford, the United States cannot attach a federal tax lien to the Interpleader Fund because, under California Civil Code § 9350[9], funds earmarked for construction in a California public entity's treasury are not subject to claims, liens, or levies that do not arise from a construction project. Essentially, Hartford contends that California Civil Code § 9350 places public works construction funds beyond the reach of a contractor's general creditors.  Hartford argues that the rules prohibiting a contractor's general creditors from making claims or liens on a public entity's construction funds are necessary to protect subcontractors on the project, and insure that the surety who issues the statutorily required bond does not become a general guarantor of the contractor's liabilities.

The United States advances two arguments in response.  First, the United States argues that any California law against imposing liens on public funds is inapplicable because its liens attach to RCC's property, not the District's property.  The United States points out that the District claims no interest in the Interpleader Fund, and is merely acting as a custodian holding funds that would be otherwise payable to RCC.

Second, the United States argues that even if California law were on point, it would be irrelevant because federal law controls whether the United States has a lien on RCC's property.  To the extent that there is any conflict between California law and federal law on whether the United States can have a lien on the property, under the Supremacy Clause federal law would control the issue.

The Court rejects Hartford's argument.  Federal law is clear that "[o]nce it has been determined that state law creates sufficient interests in the taxpayer to satisfy the requirements of the federal tax lien provision, state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States."  Drye v.

---

[9]California Civil Code § 9350 provides: "The rights of all persons furnishing work pursuant to a public works contract, with respect to any fund for payment of construction costs, are governed exclusively by this chapter, and no person may assert any legal or equitable right with respect to that fund, other than a right created by direct written contract between the person and the person holding the fund, except pursuant to the provisions of this chapter."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

United States, 528 U.S. 49, 52 (1999) (quoting United States v. Bess, 357 U.S. 51, 56 –
57 (1958)).  California law cannot prevent a federal tax lien from attaching to property
once it has been determined that there is a sufficient interest to which the lien can attach.
Accordingly, the tax liens can attach to RCC's state law right to receive funds pursuant
to a contract.

###        3.        The Relative Priority of the Claims

Last, the Court considers the relative priority of the federal tax liens and
Hartford's claims against the Interpleader Fund.  The government has submitted Notices
of Federal Tax Lien filed with the California Secretary of State on the following dates:
May 22, 2009; September 24, 2009; November 20, 2009; March 5, 2010; April 12, 2010;
July 16, 2010.  Def.'s Mot., Exs. 103 – 108.  Although plaintiff disputes the accuracy of
the balances asserted in these notices, it does not dispute their genuineness.  Hartford
SDF at 11.  Additionally, plaintiff admits that its claims do not take priority over the
May 22, 2009 tax lien, but argues that its claims have priority over the rest of the liens.

"[O]nce the tax lien has attached to the taxpayer's state-created interests, we enter
the province of federal law, which we have consistently held determines the priority of
competing liens asserted against the taxpayer's property or rights to property."  Aquilino,
363 U.S. 509, 513 (1960).  Absent a provision to the contrary, the principle of 'first in
time first in right' determines the priority of competing liens under federal law.  United
States v. McDermott, 507 U.S. 447, 449 (1993).

In this case, however, the rule of first in time is first in right does not apply.
Under 26 U.S.C. § 6323(c)(1), the tax code sets out special rules for determining the
priority of a federal tax lien as against "a security interest which came into existence
after the tax lien filing but which is in qualified property covered by the terms of a
written agreement entered into before tax lien filing and constituting . . . an obligatory
disbursement agreement."  26 U.S.C. § 6323(c)(1)(A).  The terms "qualified property"
and "obligatory disbursement agreement" are further defined in § 6323(c)(4):

The term "obligatory disbursement agreement" means an agreement
(entered into by a person in the course of his trade or business) to make
disbursements, but such an agreement shall be treated as coming within the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

term only to the extent of disbursements which are required to be made by reason of the intervention of the rights of a person other than the taxpayer.

Where the obligatory disbursement agreement is an agreement ensuring the performance of a contract between the taxpayer and another person the term "qualified property" shall be treated as also including the proceeds of the contract the performance of which was ensured.

26 U.S.C. § 6323(c)(4)(A), (C). When the requirements of § 6323(c)(1)(A) are met, a tax lien is not valid with respect to an after-arising security interest if that security interest "is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation." 26 U.S.C. § 6323(c)(1)(B).

Under the plain language of § 6323(c)(1), Hartford has a "security interest" in "qualified property" covered by an "obligatory disbursement agreement" that was entered into in August 2009, a point in time prior to the filing of all the federal tax liens except for the lien filed on May 22, 2009. Levesque Decl. ¶ 5. The term "security interest" is defined in § 6323(h) to mean "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." Here, as explained in more detail below, Hartford has acquired by subrogation the rights of subcontractors who filed stop notice claims with the District, and the rights granted to stop notice claimants are "for the purpose of securing payment." Cal. Civ. Code § 9350 et. seq. Although Hartford's claim to the Interpleader Fund is a subrogation claim, and not a contract claim, Hartford's subrogation rights arise out of its contract with RCC, and hence are rights "acquired by contract" for purposes of § 6323(h). See In re Bay State York Co., Inc., 162 B.R. 922, 934 (Bank. Ct., D. Mass 1993).

With respect to the other requirements of § 6323(c)(1), the interpleader fund consists of the proceeds of the construction agreement between the District and RCC, and hence falls squarely within the definition of "qualified property" in § 6323(c)(4)(C). Moreover, the payment bond agreement between Hartford and RCC was an agreement to make disbursements on behalf of subcontractors who provided materials and labor on the Project, and hence falls squarely within the definition of an "obligatory disbursement agreement" under § 6323(c)(4)(A). Consistent with this analysis, courts have found that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL      "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

§ 6323(c)(1) applies to determine the priority of competing liens asserted by sureties and the IRS on the proceeds of construction contracts. See International Fidelity Ins. Co. v. United States, 949 F.2d 1042, 1044 – 1045 (8th Cir. 1991); United States v. Trigg, 465 F.2d 1264, 1271 – 1272 (8th Cir. 1972).[10]

Since the requirements in § 6323(c)(1)(A) are satisfied, to determine the priority of the federal tax liens, the Court considers whether Hartford's claims would be protected under California law against a judgment lien arising at the time of the tax liens. See § 6323(c)(1)(B). Here, Hartford's claims are based on the doctrine of equitable subordination: Hartford argues that it stands in the shoes of the subcontractors who it paid after they made claims on Hartford's payment bond. These subcontractors had filed stop payment notice claims with the District, and Hartford now argues that it has acquired the rights of the stop notice claimants. Additionally, Hartford argues that under the doctrine of equitable subordination its claims relate back to the date it executed the payment bond, not the date the stop notice claims actually arose.

Under California law, sureties who satisfy the claims of stop notice claimants acquire those claimants' rights through subrogation. Leatherby Ins. Co. v. City of Tustin, 76 Cal. App. 3d 678, 685 (Cal. App. 4th 1977). Here, subcontractors served stop payment notices on the District well in excess of the amount of the Interpleader Fund, Levesque Decl. ¶ 11, and since Hartford paid these subcontractors, it has acquired their rights. Id.; see also Cal. Civ. Code § 2848 ("A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his co-sureties to contribute thereto, without regard to the order of time in which they became such.").[11]

---

[10] IRS regulations also contemplate that § 6323(c) applies when federal tax liens compete for priority with security interests asserted by sureties. See 26 C.F.R. § 301.6323(c)-3(d).

[11] Additionally, Hartford may be correct that due to special equitable subrogation principles that apply to sureties, its lien would relate back to the date it executed the payment bond. San Diego County v. Croghan, 2 Cal. App. 2d 494, 500 – 501 (Cal. App. 1934) ("it seems to be settled by good authority that the right of subrogation goes back

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

Accordingly, Hartford has whatever interest in the Interpleader Fund the stop notice claimants would have held if Hartford had not paid their claims. The Court next determines whether this interest would be "protected" against a judgment lien arising out of an unsecured obligation on the dates the federal tax liens were filed. See 26 U.S.C. § 6323(c)(1)(B).

California's stop payment notice statutory scheme provides robust protection to subcontractors on public works contracts such as the contract between RCC and the District. Cal. Civ. Code § 9350 et. seq. Under these statutes, it appears that the stop notice claimants would be protected against judgment liens filed on the relevant dates, for two reasons.

First, California Civil Code § 9350 provides that:

The rights of all persons furnishing work pursuant to a public works contract, with respect to any fund for payment of construction costs, are governed exclusively by this chapter, and no person may assert any legal or equitable right with respect to that fund, other than a right created by direct written contract between the person and the person holding the fund, except pursuant to the provisions of this chapter.

Since the Interpleader Fund was undoubtedly a fund for payment of construction costs, § 9350 appears to govern claims made against the Interpleader Fund. Under § 9350, no legal or equitable right can be asserted against the Interpleader Fund unless it is provided for by the stop notice statutes, and the stop notice statutes do not allow a judgment creditor to take priority over a stop notice claimant. In fact, § 9456 provides that any statutory lien is subordinate to the rights of a stop notice claimants, and judgment liens in

---

to the date of the contract of suretyship and takes priority over a prior assignment.") (citing, inter alia, Prarie State Nat. Bank v. United States, 164 U.S. 227 (1896); Hennsingen v. United States Fidelity & Guaranty Co., 208 U.S. 404 (1908)). This rule is not mentioned in later California case law, but the Court need not decide whether this rule retains validity because the date on which the stop notice claims arise does not affect the Court's analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

California are statutory liens.[12]  Accordingly, the stop notice claims to which Hartford is subrogated are protected against judgment liens arising on the dates of the tax liens.

There is a second, independent basis for holding that stop notice claims are protected from earlier arising judgment liens.  Under the California Code of Civil Procedure, a judgment creditor cannot use a writ of execution to reach funds owed to the judgment debtor by a public entity.  Cal. Civ. Proc. § 699.720(a)(5).  Instead, the judgment creditor must resort to the procedure set out in California Code of Civil Procedure § 708.750.  See Cal. Civ. Proc. § 708.710(b) ("'Public entity' means the state, a county, city, district, public authority, public agency, and any other political subdivision in the state."); Cal. Civ. Proc. § 708.750 (setting out collection procedure "if money is owing and unpaid to a judgment debtor by a public entity other than a state agency".).  Under § 708.750, after receiving a certified copy of the judgment against the judgment debtor, a public agency discharges the claim of the judgment debtor by either: (1) depositing to a court a portion of the amount owed to the judgment debtor sufficient to satisfy the judgment and paying the remaining balance to the judgment debtor, or (2) paying the full amount owed to the court if the judgment is greater than the amount owed to the judgment debtor.  Crucially, when calculating the amount owed to a judgment debtor under § 708.750, a public agency is required to deduct the amount owed to stop notice claimants and set aside funds owed on a public works contract for paying stop notice claimants.  Cal. Civ. Proc. § 708.760(a) – (b).

Read together, these provisions from the California Code of Civil Procedure contemplate that a judgment creditor seeking satisfaction of its claim through funds owed on a public contract cannot reach funds necessary to satisfy stop notice claimants.  Presumably, this is because the funds necessary to satisfy the stop notice claimants are withheld for distribution to those claimants pursuant.  Accordingly, stop notice claimants are protected under California law from judgment creditors insofar as they are seeking to be paid out of funds due under a public contract.

---

[12] "A judgment lien is purely a creature of statute."  California Jurisprudence, 3d, Enforcement of Judgements VII.B § 53 (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     "O"

| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
|---|---|---|---|
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

Therefore, pursuant to 26 U.S.C. § 6323(c), the federal tax liens arising after Hartford entered into its surety contract with the District in August 2009 would not be valid with respect to proper stop notice claims filed with the District. It follows that if the subcontractors in this case filed stop notice claims that meet the requirements set out in the California Civil Code § 9350 et. seq., the federal tax liens arising after August 2009 are not valid against Hartford's claims.

Turning to the stop notice claims filed in this case and paid by Hartford, it appears that those claims met the requirements in § 9350 et seq. As explained in Hartford's briefing, California law places three kinds of constraints on stop notice claims: (1) constraints on proper claimants, (2) constraints on information in the notice and proper delivery, and (3) constraints on timely filing and commencing litigation to enforce stop notice claims. For at least three stop notice claims paid by Hartford, namely the claims filed by S&J Supply Co., Inc., R.J. Noble Co., and HD Supply Waterworks LP, it appears that these requirements were met. These three claimants are subcontractors to RCC, and hence are proper stop notice claimants under California Civil Code § 9100. Levesque Decl ¶¶ 9, 14, 21. Additionally, each of the stop notices filed by these claimants provided a general description of the kind of work furnished by the stop notice claimants and the value of the work, and because the stop notices were produced by the District in discovery, they were delivered to the District. Steiner Decl. ¶ 6, Exs. E, J, Q. Therefore, the stop notices met the information and delivery requirements of California Civil Code § 9352. Finally, pursuant to California Civil Code §§ 9356, 9502 stop notices must be given within thirty days after a notice of completion is recorded for the project, and litigation to enforce a stop notice and secure the claimant's right to payment must be commenced no later than ninety days after the last date a stop notice can be filed. Here, a notice of completion for the project was recorded on August 18, 2011. Steiner Decl. ¶ 4, Ex. B. Hartford's submissions show that all stop notices and litigation to secure payment pursuant to the stop notices for these claims was filed on or before September 14, 2011, and therefore all stop notice claims also complied with the timeliness requirements. Steiner Decl. Exs. E, J, Q; Hartford's Request for Judicial Notice Exs. R, S, T.

Therefore, because Hartford paid roughly $551,000 to resolve these valid stop notice claims, Levesque Decl. ¶ 6, it stands in the shoes of these stop notice claimants,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | "O" |
|---|---|---|---|
| Case No. | CV12-1097 (CAS) (AGRx) | Date | November 19, 2012 |
| Title | HARTFORD FIRE INSURANCE COMPANY V. ELSINORE VALLEY MUNICIPAL WATER DISTRICT, ET. AL. | | |

and all of the federal tax liens except the lien dated May 22, 2009 are not valid against Hartford's claims to the Interpleader Fund.

## V.    CONCLUSION

The Court hereby GRANTS IN PART and DENIES IN PART the United States' motion for summary judgment, and DEFERS ruling on United States' motion for summary judgment in part.  The Court finds that the United States' May 22, 2009 tax lien on the Interpleader Fund is superior to Hartford's claims, but the United States' remaining liens are subordinate to Hartford's claims.  The Court defers ruling on the amount of the United States' claim arising out of the May 22, 2009 tax lien until Hartford has completed discovery related to the amount of RCC's unpaid taxes.

IT IS SO ORDERED.

|  | 00 | : | 05 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |